**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEVEN W. COLLIER,
            *Petitioner-Appellant,*

            v.

BOB BAYER,
            *Respondent-Appellee.*

No. 04-15017

D.C. No.
CV-99-00641-ECR/
RAM

OPINION

Appeal from the United States District Court
for the District of Nevada
Edward C. Reed, District Judge, Presiding

Argued and Submitted
November 4, 2004—San Francisco, California

Filed June 3, 2005

Before: Betty B. Fletcher, Sidney R. Thomas, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge B. Fletcher
Dissent by Judge Bea

## COUNSEL

Franny A. Forsman and John C. Lambrose, Las Vegas, Nevada, for the petitioner-appellant.

Brian Sandoval and Robert E. Wieland, Reno, Nevada, for the respondent-appellee.

## OPINION

B. FLETCHER, Circuit Judge:

Petitioner-Appellant Stephen Wayne Collier appeals from the decision of the United States District Court for the District of Nevada, which denied his petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court denied Collier's habeas petition for failing to comply with the State of Nevada's time limits for pursuing habeas relief. Collier challenges the adequacy of Nevada's time limit for filing habeas corpus appeals and the tolling provisions provided therein. Further, he argues cause and prejudice to excuse his purported procedural default.

We have jurisdiction pursuant to 28 U.S.C. § 2253. We reverse the district court's decision and hold that the particular application of Nevada's time limits and tolling provisions in Collier's case was not adequately established prior to his appeal. Because we reverse on this ground, we do not reach the question of whether Collier had cause or suffered prejudice.

### Standard of Review

Federal district court decisions denying 28 U.S.C. § 2254 habeas petitions for procedural default are reviewed *de novo*. *Fields v. Calderon*, 125 F.3d 757, 759-60 (9th Cir. 1997). Factual findings underlying the decision are reviewed for clear error. *Luna v. Cambra*, 306 F.3d 954, 959 (9th Cir. 2002). Mixed questions of law and fact involving constitutional issues are reviewed *de novo*. *Tomlin v. Myers*, 30 F.3d 1235, 1241 (9th Cir. 1994).

## Factual Background

Collier pursues this habeas appeal from a judgment based on a plea and sentence of forty-five years for trafficking in controlled substances. Collier and co-defendant, Christopher Glen Hammond, pled guilty to selling methamphetamine to a government informant, Gary McConnell. Collier and Hammond sold drugs to McConnell on March 12, 1994, while McConnell was working with Nevada's Consolidated Narcotics Unit ("CNU"). McConnell worked with the CNU as part of a plea bargain for trafficking charges pending against him. During the transaction Collier gave drugs to Hammond, who then gave them to McConnell. McConnell paid for the drugs with money given him by the CNU. McConnell testified against Collier and Hammond at their preliminary hearing on June 9, 1994.

Collier faced a several count information. He was able to negotiate a plea bargain. He pled guilty to one count of drug trafficking and he agreed to a forty-five-year prison sentence. The additional charges against Collier were dropped. Collier's co-defendant pled guilty to a similar charge and he agreed to a ten-year prison sentence.

Five days before Collier was sentenced, a new Nevada law went into effect reducing the minimum and maximum prison sentences for several criminal offenses. The sentence for the offense to which Collier pled guilty was dramatically reduced. The minimum was reduced from ten years to two years. The maximum was reduced from life to fifteen years.[1] This statute

---

[1]The amended statute says: "[I]f the quantity involved . . . [i]s 14 grams or more, but less than 28 grams, for a category B felony by imprisonment in the state prison for a minimum term of not less than 2 years and a maximum term of not more than 15 years and by a fine of not more than $100,000." Nev. Rev. Stat. 453.3385(2) (1995).

Previously, the statute read: "If the quantity involved . . . is 14 grams or more, but less than 28 grams, by imprisonment in the state prison for life or for a definite term of not less than 10 years and by a fine of not less than $100,000." Nev. Rev. Stat. Ann. 453.3385(2) (Michie 1993).

went into effect July 1, 1995. The revised statute does not apply to any offense committed before the effective date. 1995 Nev. Stat. ch. 443 § 393. Attempts by Collier to challenge his sentence based on the amended statute have failed.

Collier was originally represented by attorney Sferrazza. Sferrazza withdrew as counsel in early 1995 because he took a job in the public sector. The court appointed the county public defender's office to represent Collier. Three different attorneys from the public defender's office represented Collier during his preliminary hearing, plea negotiations, and sentencing. The final attorney to represent Collier was attorney Mitchell. Mitchell appeared with Collier at his July 5, 1995 sentencing. Mitchell had previously represented McConnell, the government's informant, and had helped McConnell negotiate a plea against several drug trafficking charges in early 1994. As part of the plea bargain, McConnell pled guilty to one count of drug trafficking. The plea resulted in several charges being dropped and the suspension of a five year prison sentence and $50,000 fine. McConnell was placed on probation for three years. The transcript of the sentencing proceedings is sealed. Shortly after accepting this plea deal, McConnell was involved with the CNU operation that resulted in Collier's arrest.

## Procedural History

### A. Proceedings in state court

Collier did not file an immediate direct appeal after entry of the final judgment against him. He did, however, file a motion to correct an illegal sentence on March 21, 1997 under Nev. Rev. Stat. 176.555 (2004).[2] He challenged his judgment

---

[2]In Nevada motions to correct an illegal sentence are a post-conviction remedy available to correct a facially illegal sentence. *See Pangallo v. State*, 930 P.2d 100, 102 n.2 (Nev. 1996); *Edwards v. State*, 918 P.2d 321, 323-24 (Nev. 1996). Motions to correct an illegal sentence (and similar

of conviction for failing to list the statute under which he was sentenced and he challenged his sentence as exceeding the maximum statutory limit for convictions under Nevada's revised sentencing statute, Nev. Rev. Stat. 453.3385(2). The Nevada state district court issued an amended judgment of conviction, listing the proper statute, on March 26, 1997. The amended judgment did not change the sentence. A few months later, Collier filed a second motion to correct an illegal sentence reviving the challenge to his sentence as exceeding the maximum statutory limit. The state district court considered the merits of this motion and held the amended law did not apply to Collier. He appealed. Two years later, the Nevada Supreme Court denied Collier's appeal on the merits, affirming the state district court.[3] The remittitur issued on June 9, 1999.

After the Nevada Supreme Court denied Collier's motion but before the remittitur issued, he filed a state habeas petition on May 28, 1999. The state district court dismissed the habeas petition as untimely, saying the petition violated the one-year time limit for filing habeas appeals. *See* Nev. Rev. Stat. 34.726(1). Collier appealed to the Nevada Supreme Court. The Nevada Supreme Court affirmed.

---

appeals) occur after a conviction and sentencing but they are not collateral attacks. *Passanisi v. State*, 831 P.2d 1371, 1373 (Nev. 1992).

Motions to correct an illegal sentence are not subject to the time bars and procedural hurdles limiting other types of appeals. The Nevada Supreme Court said, "Because of the very nature of the remedy sought in a motion for relief from a sentence that is either facially illegal or is the result of a mistaken assumption regarding a criminal defendant's record, time constraints and procedural defaults necessarily do not apply." *Edwards*, 918 P.2d at 324. Collier's motions to correct an illegal sentence were properly filed and were considered on the merits by the Nevada state courts.

[3]During this same time, Collier filed a belated direct appeal. This appeal was dismissed by the Nevada Supreme Court for lack of jurisdiction due to timeliness.

B. Proceedings in federal court

Collier filed a federal habeas petition in the Nevada federal district court on June 30, 2000. The district court dismissed the petition as mixed (including both exhausted and unexhausted claims), but gave Collier an opportunity to amend his petition. He abandoned the unexhausted claims and pursued only those claims the district court deemed exhausted. The district court denied Collier's habeas petition as barred by Nevada's procedural rule that habeas petitions must be filed within one year of the judgment of conviction or within one year of the Nevada Supreme Court's remittitur from an appeal from judgment. *See* Nev. Rev. Stat. 34.726(1). The district court found Nevada's rule was adequate and independent and that Collier failed to show cause and prejudice for the default. Collier then petitioned for and received a certificate of appealability. The district court found Collier had "raised a valid showing of the denial of a constitutional right" for ineffective assistance of counsel. The district court also found the adequacy of Nevada's procedural rule "could be debatable among jurists of reason."

**Analysis**

The State of Nevada requires habeas petitions to be filed within one year of the state supreme court's remittitur in an appeal taken from judgment. Nev. Rev. Stat. 34.726(1). In this case, the trial court amended Collier's final judgment on March 26, 1997. After the amendment, Collier continued to pursue relief through a properly filed motion to correct an illegal sentence. The motion was denied and Collier appealed to the Nevada Supreme Court. The Nevada Supreme Court denied Collier's appeal on the merits on May 13, 1999. Immediately thereafter, on May 28, 1999, Collier filed a state habeas petition. The remittitur from the Nevada Supreme Court's order issued on June 9, 1999.

On the face of Nevada's statute limiting the time to file for habeas corpus relief, Collier's state habeas petition conforms with the state's one year time limit. *See* Nev. Rev. Stat. 34.726(1). Collier filed his habeas petition within one year of the state supreme court's remittitur on his appeal. The Nevada Supreme Court, however, interpreted the law differently in Collier's case. The Nevada Supreme Court said Collier's state habeas petition was not timely filed under Nev. Rev. Stat. 34.726(1), thus denying Collier's habeas petition on state procedural grounds.[4] Collier argues this procedural rule was not adequately established prior to his appeal. He argues the rule cannot bar his pursuit of federal habeas relief. The Respondent disagrees.

We conclude that the rule was not adequately established prior to Collier's appeal. We find nothing in either the plain language of Nev. Rev. Stat. 34.726 or the Nevada courts' interpretation of that statute to suggest that an amended judgment would not entitle Collier to a new one year time period to pursue habeas relief. Furthermore, there is no established rule that motions to correct an illegal sentence do not qualify as an appeal from judgment, thus tolling the period for filing a habeas petition.

A.    Adequate and independent state grounds

For a state procedural rule to prevent federal review of federal claims, the state's rule must be both adequate and independent. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The Supreme Court has held in the habeas context that "this Court will not review a question of federal law decided by a

---

[4]Federal courts of appeal may not review state courts' interpretations of state law. The Supreme Court said, "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Thus, we defer to the state court's interpretation of state law.

state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.* The Court explained, "The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.* at 729-30.

**[1]** In order for a state procedural rule to preclude federal review, the rule must be "firmly established and regularly followed." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991). The Ninth Circuit has elaborated that "a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)).**[5]** If a state procedural rule is not well-established before a petitioner supposedly breaks the rule, then the rule cannot prevent federal review of the petitioner's federal claims. Although the state is not required "to articulate every permutation of every rule," *Bargas v. Burns*, 179 F.3d 1207, 1213 (9th Cir. 1999), a rule held generally adequate can be deemed inadequate as applied to particular unique circumstances, *Lee v. Kemna*, 534 U.S. 362, 376 (2002). Once a petitioner has demonstrated the inadequacy of a rule, the state bears the ultimate burden of

---

**[5]**The dissent argues that the petitioner must cite cases in which a procedural bar is applied inconsistently. Dissent at 6245. Inconsistency is only one aspect of the principle that a state's procedural bar must be adequate. This court has repeatedly said the state's rule must be clear, consistently applied, and well-established. *See e.g.*, *Robinson v. Ignacio*, 360 F.3d 1044, 1052 (9th Cir. 2004); *Melendez v. Warden*, 288 F.3d 1120, 1122 (9th Cir. 2002); *Jackson v. Calderon*, 211 F.3d 1148, 1153 (9th Cir. 2000). The emphasis in the case before us is whether the rule was well-established. We, obviously, do not require a habeas petitioner to show inconsistency in application when the problem with the rule is that the rule is not clear or well-established and has never been applied to the unique circumstances of his case.

proving the rule bars federal review. *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003).[6]

This standard for determining the adequacy of state procedural bars is well-established in federal habeas law. The dissent accuses the majority of creating "a radical new rule of law which shifts the burden of proof from the prisoner to the State." Dissent at 6233-34. The dissent confuses a disagreement over the interpretation of Nevada state law with a conflict over the federal habeas standard. In this opinion we hold that Collier met his burden by establishing that no state rule was adequately established to bar his state habeas petition. Only then do we shift the burden to the state, as the standard demands. This is merely an application of the federal habeas standard as it stands today. This holding makes no new habeas law.

State procedural rules must also be independent to preclude federal review. As Collier challenges only the adequacy of Nevada's procedural rule, not its independence, we do not address the independence prong.

The Nevada procedural rule at issue is a one-year time limit for filing a habeas corpus petition. The relevant law states:

---

[6]The Ninth Circuit explained the state's burden for proving the adequacy of a state rule, saying:

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Powell v. Lambert*, 357 F.3d 871, 875 (9th Cir. 2004) (quoting *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003).

> Unless there is good cause shown for delay, a petition that challenges the validity of a judgment of sentence must be filed within 1 year after entry of the judgment of conviction or, if an appeal has been taken from the judgment, within 1 year after the supreme court issues its remittitur. For the purposes of his subsection, good cause for delay exists if the petitioner demonstrates to the satisfaction of the court:
>
> > (a)  That the delay is not the fault of the petitioner; and
> >
> > (b)  That dismissal of the petition as untimely will unduly prejudice the petitioner.

Nev. Rev. Stat. 34.726(1). This court previously found that the Nevada Supreme Court generally applies this time limit consistently to habeas petitions. *See, e.g.*, *Loveland v. Hatcher*, 231 F.3d 640, 643 (9th Cir. 2000); *Moran v. McDaniel*, 80 F.3d 1261, 1268-70 (9th Cir. 1996). The adequacy of this general time bar, however, is not at issue here. The issues for review are specific to the application of this rule in Collier's case. First, was it clear and well-established in Nevada law that the original judgment, not the amended judgment of conviction starts the one-year time limit? Second, was it clear and well-established in Nevada law that a motion to correct an illegal sentence does not toll the one-year time limit?

B.   Amended judgments

**[2]** The plain language of Nev. Rev. Stat. 34.726(1) does not distinguish between original judgments of conviction and amended judgments of conviction. Until recently, there was little in Nevada statutory or case law to offer guidance on this

issue.[7] Then, on September 3, 2004, the Nevada Supreme Court published an opinion holding that amended judgments of conviction do not *automatically* re-start the time clock under Nev. Rev. Stat. 34.726(1). *Sullivan v. Nevada*, 96 P.3d 761, 764 (Nev. 2004). Instead, an amended judgment of conviction may, if proved, qualify as "good cause" under Nev. Rev. Stat. § 34.726(1)(a), thus allowing for additional appeals. *Id.* The Nevada Supreme Court said:

> We emphasize, however, that the entry of an amended judgment may in and of itself provide the good cause required by that statute to present appropriate post-conviction claims relating to the amendment at issue. In other words, if the claims presented in a petition filed within one year of the entry of the amended judgment challenge the proceedings leading to a substantive amendment of the judgment and could not have been raised in prior proceedings, there may be no delay attributable to the "fault of the petitioner."

[7]In 1888, the Nevada Supreme Court denied a motion for a new trial in a civil case where the trial court's clerk had entered the wrong name on the judgment. *Burbank v. Rivers*, 18 P. 753 (Nev. 1888). The Nevada Supreme Court found the clerical error did not extend the time for filing an appeal. *Id.* at 755. The court said that to prevail on such a basis, the petitioner must "affirmatively show, to the satisfaction of this court, that he was deceived or misled by the entry as made." *Id. Burbank* is not instructive in the case before us. First, the amendment to Collier's judgment was not a clerical error. The trial court failed to include the basis for the judgment: the statute under which Collier was sentenced. Second, the *Burbank* case is not cited by the state courts as grounds for the state courts' opinions in this case. The *Burbank* rule (if such a rule exists) is not at issue here. Finally, the *Burbank* case has not been cited by a Nevada state court since 1921. *See Bottini v. Mongolo*, 197 P. 702, 704 (Nev. 1921). Nowhere is it cited in the State's briefing materials. The dissent's shaking the dust off a century old rule, not used by the state courts in eighty years, does not establish the rule as adequate under federal habeas law. We do not reject the rule because it is old, we reject it because it is not well-established.

*Id.* As *Sullivan* was decided only recently, such a rule cannot be held clearly and well-established at the time Collier filed his motion to correct an illegal sentence in 1997. Notably, the Nevada Supreme Court does not cite a single statute, rule, or case standing for the proposition that amended judgments of conviction do not automatically re-start the one-year time clock under Nev. Rev. Stat. 34.726(1). The two cases noted in the discussion, *Dickerson v. State*, 967 P.2d 1132 (Nev. 1998) and *Pelligrini v. State*, 34 P.3d 519 (Nev. 2001), are cited only to illustrate the legislature's general intent in enacting Nev. Rev. Stat. 34.726(1). *Sullivan,* 96 P.3d at 764 nn.7 & 10-11. There is scant evidence that amended judgments of conviction did not re-start the one-year clock at the time of Collier's default.

**[3]** The dissent would give substantial weight to *Morrell v. Edwards*, 640 P.2d 1322 (Nev. 1982). In that case, the Nevada Supreme Court created a rule governing when the time for an appeal in the *civil* context may start anew after an amended judgment. The court stated that whether "an appeal is properly taken from an amended judgment rather than the judgment originally entered depends upon whether the amendment disturbed or revised legal rights and obligations which the prior judgment had plainly and properly settled with finality." *Id.* at 1324. The Nevada Supreme Court has never applied this standard in a criminal case. The standard for criminal cases, as established in 2004, is whether the issues presented in the appeal relate to a substantive change in the amended judgment. *Sullivan*, 96 P.3d at 764. Rules for civil appeals do not dictate procedure for criminal habeas appeals. The Nevada Supreme Court has specifically said, "this court has consistently and repeatedly held that rules of civil appellate procedure are not applicable to appeals from statutory post-conviction habeas corpus proceedings." *Klein v. Warden*, 43 P.3d 1029, 1033 (Nev. 2002). The rule establishing when amended judgments allow a new period to file habeas appeals was decided by the Nevada Supreme Court's

holding in *Sullivan* in 2004.**⁸** Because this rule was not adequately established, if at all, prior to 2004, it cannot bar federal habeas review in Collier's case.**⁹**

## C.   Motions to correct an illegal sentence

**[4]** The second procedural rule at issue is whether a motion to correct an illegal sentence tolls the one-year clock under Nev. Rev. Stat. 34.726(1). The question is whether a motion to correct an illegal sentence is an "appeal . . . from the judgment" as stated in Nev. Rev. Stat. 34.726(1). Collier's motions to correct an illegal sentence were properly filed under Nevada state law. The state district court considered Collier's first motion and amended his judgment of conviction. Both the Nevada district court and the Nevada Supreme Court considered his second motion and denied it on the merits. Collier filed his federal habeas petition after the Nevada Supreme Court's remittitur on his state habeas petition. When Collier filed his motion to correct an illegal sentence, there was little in Nevada's state law to guide the courts' understanding of whether these motions are an appeal from judgment, thus tolling the period for filing a habeas petition under Nev. Rev. Stat. 34.726(1). Then, after Collier filed his motion to correct an illegal sentence, the Nevada Supreme Court gave

---

**⁸**The first footnote of the Nevada Supreme Court's opinion states that the court had previously disposed of the case in an unpublished disposition on March 5, 2004. The government then filed a motion seeking publication of the decision. "Cause appearing, [the Court granted] the State's motion to publish." *Sullivan*, 96 P.3d at 762 n.1. The cause for publication is not mentioned. Given the lack of guidance on this issue in prior opinions, the need for publication is consistent with the need to establish the rule.

**⁹**The dissent suggests that because Collier cannot show cases illustrating an inconsistent application of such a rule Collier's claim fails. Dissent at 6244-45. The dissent completely ignores the well-established prong of the standard for determining adequacy. *See supra* at 6239-40. Collier has shown this state procedural rule did not exist prior to 2004 and the government has failed its burden to show it was adequately established.

form to these words in *Dickerson v. State*, 967 P.2d at 1133-34. There the court held only timely direct appeals qualified as appeals tolling the one-year time limit.[10] *Id.* The Court held:

> We now construe [Nev. Rev. Stat.] 34.726(1) to mean that the one-year period for filing a post-conviction habeas corpus petition begins to run from the issuance of the remittitur from a timely direct appeal to this court from the judgment of conviction or from the entry of the judgment of conviction if no direct appeal is taken. A *timely* direct appeal is one in which the notice of appeal is filed with the district court within the time period prescribed by statute.

*Id. Dickerson* was decided in 1998 and Collier filed his motion to correct an illegal sentence in 1997.[11] Collier cannot be held accountable for rules established after his purported breach. *See Ford v. Georgia*, 498 U.S. 411, 424 (1991); *Petrocelli v. Angelone*, 248 F.3d 877, 885 (9th Cir. 2001).

The government concedes it was in *Dickerson* where the tolling provisions in Nev. Rev. Stat. 34.726(1) were narrowed to apply only to a "*timely* direct appeal." *Dickerson*, 967 P.2d

---

[10]Because the *Dickerson* case was decided after Collier filed his motion to correct an illegal sentence, it is not determinative in this case. Thus we need not explore whether under Nevada state law motions to correct an illegal sentence are direct appeals.

[11]The dissent relies heavily on *Dickerson*, 967 P.2d 1132, and the NRAP 4(b). Dissent at 6251-53. Neither is controlling here. *Dickerson* was decided after Collier's purported breach. NRAP 4(b) established tolling mechanisms for *direct* appeals, not habeas appeals. It is inapplicable to the question of whether a motion to correct an illegal sentence tolls the time period for filing a habeas appeal. Furthermore, NRAP 4(b) does not govern motions to correct an illegal sentence. Such motions, as the Respondent and the dissent concede, need not be filed within thirty days of judgment as NRAP 4(b) requires. Collier's motions to correct an illegal sentence were timely and were addressed on the merits by the Nevada courts.

at 1133. Nonetheless, the government argues such a rule "necessarily follows" from a prior Nevada Supreme Court decision in *Edwards v. State*, 918 P.2d 321 (Nev. 1996). In *Edwards*, the Nevada Supreme Court explained that motions to correct an illegal sentence are special because they attack a sentence that is "either facially illegal or is the result of a mistaken assumption regarding a criminal defendant's record, time constraints and procedural defaults necessarily do not apply." *Id.* at 324. The Nevada Supreme Court's discussion of motions to correct an illegal sentence (and like appeals) in *Edwards* emphasizes that these motions are free from the various constraints and time limits restricting access to other appeals. In particular these motions are exempted from the limitations on habeas petitions. *Id.*; Nev. Rev. Stat. 34.724(2)(a). Suggesting it "necessarily follows" from the discussion in *Edwards* that motions to correct an illegal sentence (and similar motions) limit an individual's ability to pursue habeas relief completely mischaracterizes the *Edwards* opinion. The Nevada Supreme Court's emphasis in *Edwards* is on narrowly defining this type of appeal while emphasizing broad access to it. Petitioners suffering under the errors challenged by motions to correct an illegal sentence are free of the procedural hurdles placed on other types of appeals. It is disingenuous to suggest *Edwards* interpreted the phrase "an appeal has been taken from the judgment" in Nev. Rev. Stat. 34.726(1) to exclude motions to correct an illegal sentence. The Nevada Supreme Court considered no such question. Twisting the court's words to create such a meaning does not establish a clear, consistently applied, and well-established rule.

Today, because of the *Dickerson* decision, the confusion present during Collier's appeal does not exist.[12] Defendant-

_____

[12]The dissent suggests that every prisoner in Nevada convicted prior to September 3, 2004 will be able to file a meritless motion to correct an illegal sentence en route to filing a state habeas petition. Dissent at 6232-33. This assertion is unwarranted. In this case, the petitioner's motion to cor-

Appellants know they may pursue habeas relief only within one year "from the issuance of the remittitur from a timely direct appeal to this court from the judgment of conviction or from the entry of the judgment of conviction if no direct appeal is taken." *Dickerson*, 967 P.2d at 1133-34.

## Conclusion

The Nevada procedural rules applied by the Nevada state courts to bar Collier's habeas petition are not adequate to preclude federal review of his habeas petition. The rules applying Nev. Rev. Stat. 34.726(1) were not clear, consistently applied, and well-established at the time of Collier's purported default. When Collier filed his motion to correct an illegal sentence in 1997 and subsequent habeas petitions, it appeared under state law a habeas petition could follow a remittitur from such an appeal and amended judgment. The district court's opinion is reversed and the appeal is remanded for consideration on the merits.

**REVERSED AND REMANDED.**

BEA, Circuit Judge, dissenting:

I respectfully dissent because the majority's opinion allows a petitioner for writ of habeas corpus to mock the Nevada

rect an illegal sentence was granted and he filed his second motion to correct an illegal sentence within the one-year period for filing an appeal. His motions were properly filed and considered on the merits by the Nevada state courts. If a person were able to replicate this unlikely pattern and they were convicted prior to the Nevada Supreme Court's opinion in *Dickerson v. Nevada*, 967 P.2d 1132 (Nev. 1998) (holding motions to correct an illegal sentence are not an appeal from a judgment) then they could and should be able to file their habeas appeal. No state rule was established to the contrary prior to the *Dickerson* opinion.

statutory deadline for filing a habeas petition from a judgment of conviction, simply by filing one or any number of motions to correct an illegal sentence, no matter how meretricious the motions. Henceforth, any prisoner convicted before the effective date of *Sullivan v. Nevada*, 96 P.3d 761 (Nev. 2004)—September 3, 2004—will be able to file a baseless motion to correct an illegal sentence as a prelude to filing a Nevada state habeas petition on the ground that the denial of his motion to correct an illegal sentence creates a one-year opportunity to file a habeas petition. I disagree with the majority's analysis on three major points.

First, it was well-established in Nevada law that a motion to correct an illegal sentence did not either re-start or toll[1] the one-year time limit in which to file a habeas petition under Nevada Revised Statute ("NRS") § 34.726(1). The majority opinion confuses appeals and habeas petitions, both of which are used to attack the merits of a judgment of conviction, with a motion to correct an illegal sentence, which is used only when the judgment contains a sentence that is invalid under the statutory sentencing scheme, or when the district court sentenced the defendant based on a misunderstanding of the defendant's prior criminal record. Just as important, there is no basis in the language of NEV. REV. STAT. § 34.726(1) to conclude that a motion to correct an illegal sentence either re-starts or tolls the time in which to file a state habeas petition.

Second, the majority opinion arrives at its conclusion by placing the burden on the State to cite this court to a prior case in which Collier's precise argument was rejected by the Nevada Supreme Court to prove that Nevada's one-year time

---

[1]This is not to suggest that Collier's motions to correct an illegal sentence were filed during the one-year period when there was time to "toll," *i.e.* stop the running of the time to file a habeas petition. Indeed, the one year had run *both* from the judgment (July 5, 1995) and the amended judgment (March 26, 1997), when Collier filed his habeas petition on May 28, 1999.

limit to file a habeas petition under NRS § 34.726(1) was well-established law. This is a radical new rule of law which shifts the burden of proof from the prisoner to the State, without the benefit of an *en banc* or Supreme Court ruling that mandates such a burden shift. Heretofore, where the State has pleaded a procedural bar and the defendant challenges the adequacy of a State's procedural bar, it is first the petitioner's burden to prove the procedural bar is inadequate. *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). Only if the petitioner proves the procedural bar is inadequate does the burden then shift to the State to prove the procedural bar is adequate. Here, Collier failed in his initial burden of proof. The majority opinion now relieves petitioners of that burden.

Further, the majority presumes that a statute is not well-established law unless a court has ruled that the statute means what it says. This ruling will lead to all sorts of mischief. Habeas petitioners have a duty to follow the plain language of a State's procedural rules, even where no State court has yet rejected the precise attempt made by the petitioner to circumvent those rules. *Bargas v. Burns*, 179 F.3d 1207, 1211 (9th Cir. 1999).

Third, even if the *amended* judgment of conviction did start anew the time period in which Collier could file an appeal, which I contend it could not, Collier's habeas petition was filed more than one year after the date of entry of the *amended* judgment of conviction. Hence, Collier's habeas petition was still barred under NRS § 34.726(1). The only way Collier's appeal from the amended judgment of conviction could be timely is if his *second* motion to correct an illegal sentence re-started the time for him to appeal from the amended judgment. Of course, a motion to correct an illegal sentence cannot revive the time in which to appeal after that time has run out; is also not one of the few motions which toll the time in which to appeal a judgment of conviction in a criminal case under Nevada Rule of Appellate Procedure 4(b).

## I. Procedural History

The precise chronology of events is important in this case. On May 17, 1995, Collier pleaded guilty to Count I of the Amended Information, which charged him with violating NRS §§ 453.3385 and 453.3405 for possession of a trafficking quantity of a controlled substance. Collier and the State entered into a plea bargain in which Collier agreed to a 45-year sentence. In exchange, the district attorney dismissed the other ten charges filed against Collier.[2]

At the time Collier entered his plea, the maximum sentence under NRS § 453.3385 for a drug trafficking offense was life in prison and a $100,000 fine. NEV. REV. STAT. § 453.3385(2) (1993). Five days before Collier was sentenced, the Nevada legislature changed the law, and the maximum sentence became fifteen years. NEV. REV. STAT. § 453.3385(2)(1995). The new version of NRS § 453.3385(2) specifically stated, however, that it did *not* apply to any offense committed before its effective date of July 1, 1995. *Id.* The Amended Information, to which Collier pleaded guilty, stated that Collier committed a violation of NRS § 453.3385 on March 12, 1994, over a year before the effective date of the new statute. Therefore, the amended statute did not apply to Collier's case.

Collier was sentenced in accordance with the plea agreement, and a final judgment of conviction was entered against him on July 5, 1995. The judgment stated that Collier was guilty of Count I of the Amended Information and the court sentenced him to 45 years imprisonment and assessed a $100,000 fine.

---

[2]Collier had been charged with eleven drug trafficking offenses. After Collier's arrest, a substantial amount of methamphetamine, ephedrine, and marijuana was found in Collier's storage shed, along with 50 weapons and narcotics paraphernalia. I add these details lest a reader of the majority opinion come away with the impression that Collier was an unfortunate bystander who infelicitously fell captive to the wares of a government plant.

Collier then had 30 days to file an appeal attacking his judgment of conviction or to extend the 30-day period by filing one or more specific motions which, under NRAP 4(b), serve to toll the running of that 30-day period:

> In a criminal case, the notice of appeal by a defendant shall be filed in the district court within thirty (30) days after the entry of the judgment or order appealed from. . . . If a timely motion in arrest of judgment[3] or for a new trial on any ground other than newly discovered evidence[4] has been made, an appeal from a judgment of conviction may be taken within thirty (30) days after entry of an order denying the motion. A motion for a new trial based on the ground of newly discovered evidence will similarly extend the time for appeal from a judgment of conviction if the motion is made before or within thirty (30) days after entry of the judgment. . . .

NEV. R. APP. P. 4(b)(1)(1995).

Collier did not file a direct appeal within 30 days after the entry of the judgment of conviction, nor did he file either a motion in arrest of judgment or a motion for new trial. Therefore, the right to appeal his judgment of conviction expired on August 4, 1995.

Because Collier did not file a timely appeal, he then had one year after the entry of his judgment of conviction to file a habeas petition under Nevada law:

---

[3]A motion in arrest of judgment must be filed within 7 days after a determination of guilt or within such further time as the court may fix during the 7-day period. NEV. REV. STAT. § 176.525 (1995).

[4]A motion for a new trial that is not based on newly discovered evidence must be filed within 7 days after the verdict or finding of guilt. NEV. REV. STAT. § 176.515 (1995).

> Unless there is good cause shown for delay, a petition that challenges the validity of a judgment or sentence must be filed within 1 year after entry of the judgment of conviction or, if an appeal has been taken from the judgment, within 1 year after the Supreme Court issues its remittitur. For the purposes of this subsection, good cause for delay exists if the petitioner demonstrates to the satisfaction of the court:
>
>> (a) That the delay is not the fault of the petitioner; and
>>
>> (b) That dismissal of the petition as untimely will unduly prejudice the petitioner.

NEV. REV. STAT. § 34.726(1) (1995). Collier failed to file a habeas petition by July 5, 1996. His right to file a habeas petition expired on that date, absent good cause for the delay.

On March 21, 1997, over 8 months after his appeal and habeas opportunities had expired because of the passage of time, Collier filed a *pro se* motion to correct an illegal sentence under NRS § 176.555. In his motion, Collier set forth the language of Count I to which he had pleaded guilty. He moved the court to amend the judgment to include the statute numbers to which he pleaded guilty, NRS §§ 453.3385 and 453.3405.[5] As a second ground for his motion, Collier quoted the revised version of NRS § 453.3385 and moved the court

---

[5]Why this punctiliousness? Perhaps Collier thought that if he got the court to put in the statute number he could argue the now *revised* statute would apply and he was being held illegally. He was conveniently forgetting that the revised statute, by its own terms, did not apply to crimes committed before its effective date of July 1, 1995. Since Collier committed the offense on March 12, 1994, regardless whether the statute number was listed in his judgment, the revised statute does not apply to Collier's case. But one must remember, Collier was acting *pro se*.

to limit his sentence to 2 years, down from the 45 years he agreed to earlier. Collier did not claim that he was ever confused as to the statute under which he was convicted. The statutes were spelled out in the Amended Information and plea agreement, and Collier himself set them forth in his motion to correct an illegal sentence.

On March 26, 1997, the Nevada state district court issued an amended judgment of conviction, in effect granting his motion that the judgment recite the statute numbers under which he was convicted. The amended judgment now specified that Collier had been found guilty of NRS §§ 453.3385 and 453.3405. The court did not, however, grant the second part of his motion; it refused to reduce Collier's sentence by 43 years. As the majority correctly noted, "the amended judgment did not change the sentence." Maj. Op. at 6221. In fact, the amended judgment of conviction even kept the original date: "Dated this 5th day of July, 1995."[6] Collier neither moved for reconsideration of his motion nor did he appeal the district court's failure to rule on his motion to limit his sentence to 2 years, or any other aspect of the amended judgment entered on March 26, 1997. Collier did not file a habeas petition before March 26, 1998.

On May 20, 1997, Collier filed a second *pro se* motion to correct an illegal sentence based on the same grounds as his first motion to correct an illegal sentence.[7]

---

[6]This is precisely in keeping with the Nevada Supreme Court's ruling in *Burbank v. Rivers*, 18 P. 753, 755 (Nev. 1888), discussed *infra*. The date of the judgment does not change when it is amended to correct a clerical mistake, as was the case here.

[7]The majority claims Collier filed this second motion "reviving" his claims asserted in his March 21, 1997 motion. Maj. Op. at 6221. To repeat is not to revive. His earlier claim had been denied; it was final. The repetition of his claim did not "relate back" or otherwise seek a reconsideration of his earlier motion. It was just a second attempt.

On May 28, 1997, the Nevada state district court denied Collier's second motion to correct an illegal sentence. The district court specifically denied Collier's motion on the merits because, by its terms, the revised version of NRS § 453.3385 did not apply to his case. This time, Collier timely appealed the district court's order denying his second motion to correct an illegal sentence on June 10, 1997.

On November 16, 1998, Collier filed a notice of appeal from his original judgment of conviction, claiming his appeal was untimely because his trial counsel did not inform Collier he had a right to appeal. The Nevada Supreme Court dismissed Collier's appeal as untimely under NRAP 4(b) on February 3, 1999.[8]

On May 13, 1999, the Nevada Supreme Court affirmed the district court's order denying Collier's second motion to correct an illegal sentence. The remittitur was issued on June 11, 1999.

On May 28, 1999, Collier filed a *pro se* petition for writ of habeas corpus in the Nevada state district court, seeking to have all charges against him dismissed. Collier again claimed his trial counsel failed to inform him that he had a right to file a direct appeal.

On August 20, 1999, the Nevada state district court dismissed Collier's habeas petition as untimely under NRS § 34.726(1). It also held that Collier failed to show good

---

[8]The Nevada Supreme Court had no power to enlarge the time for Collier to file his direct appeal. NEV. R. APP. P. 26(b) (1995); *Walker v. Scully*, 657 P.2d 94 (Nev. 1983). Neither could the court have extended the time for Collier to file either a motion in arrest of judgment or a motion for new trial to toll the time to file an appeal. NEV. REV. STAT. § 178.476 (1995); *Culinary & Hotel Serv. Workers Union v. Haugen*, 357 P.2d 113 (Nev. 1960) (court did not have power to extend time to file motion for new trial, even pursuant to a stipulation between the parties, and thus the notice of appeal was untimely).

cause for the untimeliness of the petition. On September 1, 1999, Collier appealed from the state district court's denial of his habeas petition to the Nevada Supreme Court.

While Collier's appeal from the denial of his state habeas petition was pending, he filed a habeas petition in federal district court through counsel on June 30, 2000.

On August 28, 2001, the Nevada Supreme Court affirmed the district court's denial of Collier's state habeas petition, holding that his petition was untimely under NRS § 34.726(1).

On March 28, 2003, the federal district court denied Collier's federal habeas petition, holding that the dismissal of Collier's state habeas petition under NRS § 34.726(1) precluded federal habeas review because NRS § 34.726(1) was an independent and adequate state procedural bar[9] and Collier failed to show good cause for the untimeliness of his state habeas petition. This timely appeal followed.

## II.   Standard of Review

We review *de novo* the district court's decision to deny a 28 U.S.C. § 2254 habeas petition. *Nunes v. Mueller*, 350 F.3d 1045, 1051 (9th Cir. 2003). We review findings of fact made by the district court for clear error, and "may affirm the district court's decision on any ground supported by the record, even if it differs from the district court's rationale." *Id.*

---

[9]For a state procedural bar to be an independent and adequate ground sufficient to support a finding of procedural default, the rule must be "clear, consistently applied, and well-established at the time of petitioner's purported default." *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994). A state procedural rule is adequate if the state courts follow it "in the vast majority of cases." *Moran v. McDaniel*, 80 F.3d 1261, 1270 (9th Cir. 1996) (citation omitted).

### III.   Analysis

**A.   Under the Plain Language of NRS § 34.726(1) a Motion to Correct an Illegal Sentence Does Not Re-Start or Toll the Time in Which to File a Habeas Petition**

Regardless whether the original or amended judgment of conviction is the relevant judgment, Collier's state habeas petition, filed on May 28, 1999, was untimely under NRS § 34.726(1) because it was filed more than one year after the original judgment was entered on July 5, 1995, and more than one year after the amended judgment was entered on March 26, 1997, neither of which did Collier timely appeal.

The Nevada Supreme Court has stated that a motion to correct an illegal sentence is to be used only when the judgment contains a sentence that is invalid under the statutory sentencing scheme, or is based on the district court's misunderstanding of the defendant's criminal record. *Edwards v. State*, 918 P.2d 321, 324-25 (Nev. 1996).

Here, Collier properly filed a motion to correct an illegal sentence given that his argument was that his judgment of conviction failed to recite the statute numbers under which he was convicted and his sentence exceeded the statutory maximum. I agree that he was able to file such motion at any time. NEV. REV. STAT. § 176.555 (1995). But this is a very different proposition from saying that a motion to correct an illegal sentence also re-starts or tolls the time in which to file a habeas petition, which must be filed within one year.

First, a motion to correct an illegal sentence and a habeas petition are entirely different remedies with different purposes. Collier's motion to correct an illegal sentence did not raise the question whether he was justly convicted. Collier had pleaded guilty. The motion raised only the question whether Collier was correctly sentenced for his crime.

On the other hand, a habeas petition is used to attack the validity of a judgment of conviction or sentence based on alleged errors occurring at trial or sentencing. *Edwards*, 918 P.2d at 324-25. A judgment of conviction encompasses not only a sentence, but also a finding of guilt. There are important reasons why the Nevada legislature has limited the time in which a judgment of conviction can be attacked collaterally. Witnesses die, move away, or forget; evidence is lost. Witnesses and evidence are irrelevant to a motion to correct a sentence, particularly where the sentence is negotiated, and imposed following a guilty plea. That is why timing is important to a habeas petition, but irrelevant to a motion to correct a sentence.

Second, under Nevada law a motion to correct an illegal sentence does not re-start or toll the time in which to file a habeas petition. Indeed, in *Edwards*, the Nevada Supreme Court specifically disapproved of the very tactic Collier is attempting to use here:

> We have observed that defendants are increasingly filing in district court documents entitled "motion to correct illegal sentence" or "motion to modify sentence" to challenge the validity of their convictions and sentences in violation of the exclusive remedy provision detailed in NRS 34.724(2)(b), in an attempt to circumvent the procedural bars governing post-conviction petitions for habeas relief under NRS chapter 34. We have also observed that the district courts are often addressing the merits of issues regarding the validity of convictions or sentences when such issues are presented in motions to modify or correct allegedly illegal sentences without regard for the procedural bars the legislature has established. If a motion to correct an illegal sentence or to modify a sentence raises issues outside of the very narrow scope of the inherent authority recognized in

this Opinion, the motion should be summarily denied.

*Id*. at 325 n.2. The majority incorrectly characterizes the holding of *Edwards*. It is true that motions to correct an illegal sentence can be filed at any time. But the filing of a motion to correct an illegal sentence does not revive, nor toll, the time in which to file a habeas petition.

Further, in *Sullivan v. Nevada*, 96 P.3d 761 (Nev. 2004), the Nevada Supreme Court considered a case that involved an amended judgment and held:

> No specific language in NRS 34.726 expressly provides that the one-year time period restarts if the judgment of conviction is amended.
>
> Moreover, construing NRS 34.726 to provide such an extended time period would result in an absurdity that the Legislature could not have intended.[10] A judgment of conviction may be amended *at any time* to correct a clerical error [under NRS § 176.565] or to correct an illegal sentence [under NRS § 176.555]. Because the district court may amend the judgment many years, even decades, after the entry of the original judgment of conviction, restarting the one-year period for all purposes every time an amendment occurs would frustrate the purpose and spirit of NRS 34.726. Specifically, it would undermine the doctrine of finality of judgments by allowing petitioners to file post-conviction habeas petitions in perpetuity.

*Id*. 764 (footnotes eliminated).

---

[10]The court in *Sullivan* was referring to precisely the "absurdity" the majority embraces today and enacts for all Nevada convictions earlier than *Sullivan*, *supra*.

The majority holds that because no Nevada court before *Sullivan* had ruled that the plain language of NRS § 34.726(1) means what it says, a petitioner could well believe that a motion to correct an illegal sentence would re-start the time in which to file a habeas petition; hence, according to the majority, the one-year time period of NRS § 34.726(1) was not "well-established" until *Sullivan*. While this argument might have some merit if the language of NRS § 34.726(1) were ambiguous and might allow one to interpret it in the manner Collier does, the language of the statute is not ambiguous. *See supra* p. 6221. In ruling that the very argument proposed by Collier "would result in an absurdity that the Legislature could not have intended," the court in *Sullivan* was interpreting what the legislature intended *when NRS § 34.726(1) was enacted*. The meaning derived is not new; it has always been there. *See*, *e.g., Bousley v. United States*, 523 U.S. 614, 633 (1998) ("It is well established that 'when this Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law.') (quoting *Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 313, n. 12 (1994)); *Schwenk v. Hartford*, 204 F.3d 1187, 1204 (9th Cir. 2000) ("It is well-established that acts of Congress enjoy a strong presumption of constitutionality and that newly-passed statutes do not require judicial ratification in order to take effect.").

## B.   Collier Has the Burden to Prove NRS § 34.726(1) Is Not Adequate

The majority holds that: "Once a petitioner has demonstrated the inadequacy of a rule, the state bears the ultimate burden of proving the rule bars federal review." Majority Op. at 6224-25. Although the majority properly cites the standard, it mis-applies the burden of proof because Collier never has established the inadequacy of NRS § 34.726(1). *See* Majority Op. at 6225, n. 6.

For ease of reference, I reiterate the Ninth Circuit's standard regarding the burden of proving the adequacy of a state rule:

> Once the state has adequately *pled* the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003) (emphasis added).

Thus, Step One is the state pleads a procedural bar. The burden is then shifted to the petitioner. Step Two is where the petitioner must demonstrate the inadequacy of the state procedural bar, including "citation to authority demonstrating inconsistent application of the rule."

The majority completely skips over Step Two, the step requiring a petitioner who claims a state procedural bar (here clearly stated in NRS § 34.726(1)) is not adequate, to prove the inadequacy of the bar. Collier has not alleged any specific factual allegations or cited us to any cases, nor can we find any, where the Nevada Supreme Court failed to apply NRS § 34.726(1), so that one could conclude NRS § 34.726(1) was not "well-established." Nor has he cited any cases where the Nevada Supreme Court allowed a motion to correct an illegal sentence to re-start either the time to file an appeal or the time to file a habeas petition. Thus, the state carried its burden under Step One by pleading NRS § 34.726(1) as a procedural bar. Collier has failed to carry his burden under Step Two.

Indeed, we have previously held that NRS § 34.726(1) is an independent and adequate state procedural rule barring federal habeas review. *See Loveland v. Hatcher*, 231 F.3d 640, 643 (9th Cir. 2000); *Moran v. McDaniel*, 80 F.3d 1261, 1269 (9th Cir. 1996). The majority's conclusion is directly at odds with *Loveland* and *Moran*. The majority concludes that because a case presenting Collier's precise factual situation had not been previously decided by the Nevada Supreme Court, the law must not be well-established. But this cannot be the rule. The precise factual situations involved in *Loveland* and *Moran* had not been decided prior to those cases either. Nevertheless, we held that NRS § 34.726(1) barred federal review of those cases.

The only difference between *Moran*, *Loveland* and this case is that Collier filed *two* motions to correct an illegal sentence rather than the one motion filed in those cases. This difference makes no more distinction than the fact that Collier is not named Loveland or Moran.

This court has already soundly rejected the argument that for a procedural bar to be "well-established" a state court must have ruled that a particular attempt to circumvent that procedural bar is invalid. In *Bargas v. Burns*, 179 F.3d 1207, 1211 (9th Cir. 1999), the petitioner made a similar attempt to circumvent Nevada's procedural bars. Bargas pleaded guilty to sexual assault in Nevada state court. He then filed a state habeas petition, claiming that he had ineffective assistance of counsel and that his plea was not knowing and voluntary. *Id.* at 1209-10. This petition was denied, but the trial court failed to rule specifically on his claim of ineffective assistance of counsel. Bargas appealed to the Nevada Supreme Court, but only on the ground that his plea was not knowing and voluntary. He failed to raise his claim of ineffective assistance of counsel. The Nevada Supreme Court affirmed the denial of his habeas petition. *Id.* at 1210.

Bargas then filed a habeas petition in federal court alleging ineffective assistance of counsel. The district court dismissed

his petition, holding that his claim of ineffective assistance of counsel was unexhausted because he failed to assert this claim before Nevada's highest court. *Id.* at 1210.

Bargas then filed a second habeas petition in state court, attempting to "revive," as Collier did in his second motion to correct an illegal sentence, his claim that he had ineffective assistance of counsel and that his plea was not knowing and voluntary. *Id.* The trial court held that Bargas had procedurally defaulted on his ineffective assistance of counsel claim by not appealing the failure to rule on that issue in his first habeas petition. *Id.*

Bargas then filed a second habeas petition in federal court, again claiming he had ineffective assistance of counsel and that his plea was not knowing and voluntary. The district court denied the petition on the claim that Bargas' plea was not knowing and voluntary, but refused to reach the issue of ineffective assistance of counsel because that claim was barred by an independent and adequate state procedural bar— NRS § 34.726(1). *Id.* On appeal, we affirmed the district court's ruling that it had no jurisdiction to hear petitioner's federal habeas petition on the issue of ineffective assistance of counsel because Nevada's law that a habeas petitioner had to raise all his claims in his first petition was "well established," even though no Nevada case had yet held that a second habeas petition did not "revive" such claims:

> [Bargas] argues that there are not any reported cases in Nevada specifically holding that a petitioner procedurally defaults a claim when he fails to appeal from the denial of post-conviction relief, and instead files a second petition for habeas corpus. Although we agree with that conclusion, Nevada law nevertheless clearly requires a petitioner to raise all claims in his first petition, unless he can demonstrate cause and prejudice . . .

*Id*. at 1211. The same is true here. Simply because no Nevada court had previously stated that a second motion to correct an illegal sentence does not re-start or toll the time in which to file a habeas petition, any more than a first such motion, does not mean the law was not well-established. NRS § 34.726(1) and NRAP 4(b) are both quite clear about what alone will toll the time to file an appeal and a habeas petition. All Collier had to do was read the relevant statutes. Although *Sullivan* was not decided at the time Collier was convicted, NRS § 34.726(1) was well-established. NRS § 34.726(1) was passed in 1991, well before Collier was convicted in 1995.

The plain language of NRS § 34.726(1) shows that motions to correct an illegal sentence do not re-start or toll the time in which to file a habeas petition. *See supra*, p. 6221. NRS § 34.726(1) states that *only* an appeal tolls the time in which to file a habeas petition. The majority opinion is reading possibilities into NRS § 34.726(1) that the plain language of that statute precludes. There are no cases where the Nevada Supreme Court allowed such a second, identical and denied motion to correct an illegal sentence to re-start or toll the time in which to file either an appeal under NRAP 4(b)(1) or a habeas petition under NRS § 34.726(1). Further, although the majority states that "Collier filed a second motion to correct an illegal sentence reviving the challenge to his sentence . . ." (Majority Op. at 6221), this second motion was not a timely-filed motion to reconsider the denial of his first motion. Thus, it could not "revive" his first motion. Accordingly, we are bound by *Loveland* and *Moran*.

## C.   A Motion to Correct an Illegal Sentence Does Not Re-Start or Toll the Time in Which to File an Appeal

Because the plain language of NRS § 34.726(1) states that an appeal will toll the time in which to file a habeas petition, we must examine whether Collier's direct appeal from his judgment of conviction was a valid appeal under Nevada law. It was not.

Under either the original judgment of conviction, entered on July 5, 1995, or the amended judgment of conviction, entered on March 26, 1997, Collier's appeal from his judgment of conviction, filed on November 16, 1998, was untimely and was therefore of no effect. NEV. R. APP. P. 4(b). This rule was well-established at the time of Collier's conviction even under the majority's holding that there must be a case saying so. *See Lozada v. State*, 871 P.2d 944, 946 (Nev. 1994).

Moreover, the amended judgment of conviction did not restart the time period for Collier to file a direct appeal attacking his judgment of conviction under NRAP 4. The Nevada Supreme Court addressed a similar situation in *Morrell v. Edwards*, 640 P.2d 1322 (Nev. 1982). There, the Nevada Supreme Court dismissed a civil appeal as untimely where the notice of appeal was not filed within thirty days of the original judgment, but was filed within thirty days of the amended judgment. The judgment had been amended to strike an award of costs. The court held that: "The test for determining whether an appeal is properly taken from an amended judgment rather than the judgment originally entered depends on whether the amendment disturbed or revised legal rights and obligations which the prior judgment had plainly and properly settled with finality." 640 P.2d at 1324. Here, the amended judgment of conviction did not revise the legal rights of the parties. The majority opinion dismisses *Edwards* because it was a civil case, but there is no reason the same principles would not apply to a criminal case.

Further, the majority opinion dismisses a similar holding in a criminal case *Burbank v. Rivers*, 18 P. 753, 755 (Nev. 1888), as dusty old law. Majority Op. at 6226-27, n.7. What the majority opinion refuses to acknowledge is that *Burbank* is still *good* law. In *Burbank*, the Nevada Supreme Court held that when a technical change is made to a judgment of conviction, the time within which an appeal may be taken from the judgment of conviction is computed from the date of the entry

of the original judgment not the amended judgment, unless the party filing the appeal can show that he was "deceived" or "misled" by the original judgment as entered. *Burbank v. Rivers*, 18 P. 753, 755 (Nev. 1888) (holding that a judgment that was amended to state the defendant's correct name did not start the time to file an appeal anew). Remember, the only change in the amended judgment (March 26, 1997) was to add the section number under which Collier was convicted. If that is not merely "clerical" or "technical," the words have lost their meaning. Here, there is no argument Collier was ever deceived or misled by the original judgment. By dismissing *Burbank* as too old, even though it has been followed and cited,[11] but never overruled, the majority establishes the bizarre rule that a statute is only well-established if a case has upheld the statute, but only if *that* case is not *too* old. Of course, the majority does not tell us at what point a case becomes overruled by operation of time.

The only way that Collier's appeal could be considered timely is if his second motion to correct an illegal sentence, which was filed on May 20, 1997, first revived and then tolled the time in which to file an appeal from his judgment of conviction. But that cannot be the case—under NRAP 4(b), only timely motions in arrest of judgment or for a new trial toll the time in which to file an appeal. *See supra* p. 6236.

Further, the majority states that "there is no established rule that motions to correct an illegal sentence do not qualify as an appeal from judgment, thus tolling the period for filing a habeas petition." Majority Op. at 6223. This is incorrect for two reasons. First, as discussed above, a motion to correct an illegal sentence presupposes that guilt was proved or admitted. An appeal from judgment posits innocence. Second, even if a motion to correct an illegal sentence were to qualify as an appeal, Collier failed to file his motion to correct an illegal

---

[11]*See Bottini v. Mongolo*, 197 P. 702, 704, 45 Nev. 245, 245 (Nev. 1921).

sentence within the 30-day time limit under NRAP 4(b) and therefore, as an appeal, the motion was of no effect. *Lozada*, 871 P.2d at 946. "In the case of an untimely appeal, no 'appeal had been taken from the judgment' within the meaning of NRS § 34.726(1) because nothing has happened." *Dickerson v. State*, 967 P.2d 1132, 1134 (Nev. 1998) (defendant who was convicted of second degree murder filed an untimely appeal, and then filed a petition for writ of habeas corpus within one year of the issuance of the remittitur on his appeal, but not within one year of his judgment of conviction; the Nevada trial court dismissed the habeas petition as untimely under NRS § 34.726(1); the Nevada Supreme Court affirmed, holding that under the language of NRS § 34.726(1) only a timely appeal tolls the one-year period in which to file a habeas petition).

The court in *Dickerson* held:

> We now construe NRS 34.726(1) to mean that the one-year period for filing a post-conviction habeas corpus petition begins to run from the issuance of the remittitur from a *timely* direct appeal to this court from the judgment of conviction if no direct appeal is taken. A timely direct appeal is one in which the notice of appeal is filed with the district court within the time period prescribed by statute. *See, e.g.,* NRAP 4. . . . In the case of an untimely appeal, no "appeal had been taken from the judgment" within the meaning of NRS 34.726(1) because nothing has happened.

> Moreover, to construe the statute any other way would lead to absurd results. . . . If the appeal referred to in NRS 34.726(1) meant any appeal, whether this court obtained jurisdiction or not, petitioners would be able to file successive notices of appeal year after year and thus perpetually re-start the one-year limitation period. Clearly, this is not

what the legislature envisioned. Indeed, this court has already noted that the statutory time periods are intended to prevent such results. "Without such limitations on the availability of post-conviction remedies, prisoners could petition for relief in perpetuity and thus abuse post-conviction remedies." *Lozada* [*v. State*, 871 P.2d 944, 950 (Nev. 1994)].

*Dickerson*, 967 P.2d at 1133-34.

Although it is true that *Dickerson* was the first Nevada case to hold that only a timely direct appeal tolls the time in which to file a habeas petition under NRS§ 34.726(1), *Dickerson* was simply relying on the plain language of NRS § 34.726(1) and NRAP 4(b), and interpreting the intent of the legislature when it enacted NRAP 4(b). By concluding that Nevada law was not well-established prior to Collier's appeal, the majority opinion overlooks the plain language of NRS § 34.726(1) and NRAP 4(b)(1). It would be a supremely arrogant view of judicial importance to say that only judges can make law. Law does not have to be in the form of a judge's decision to be binding. Statutes and rules are also binding.

Here, under the majority's analysis, a Nevada prisoner can completely defeat both NRS § 34.726(1) and NRAP 4(b), and repeatedly re-start the time in which to file a state habeas petition, simply by filing a motion to correct an illegal sentence and then appealing the denial of that motion—even if the grounds alleged in the motion to correct an illegal sentence could have been brought up in a timely direct appeal from the judgment of conviction, or an appeal from an identical earlier motion, as is the case here.

There is no need for such a rule. Under Nevada law, petitioners who can show good cause for the delay can avoid the one-year limitation under NRS § 34.726(1). *Dickerson*, 967 P.2d 1132, 1134.

To establish good cause to excuse a procedural default under Nevada law, "a defendant must demonstrate that some impediment external to the defense prevented him from complying with the procedural rule that has been violated." *Lozada*, 871 P.2d at 946. Here, Collier has not shown good cause because, under Nevada law, the failure of counsel to advise a criminal defendant that he has the right to file a direct appeal is not good cause for failing to file a habeas petition within one year after judgment of conviction. *Dickerson*, 967 P.2d at 1134.[12]

Prior to and at the time of Collier's conviction in 1995, it was well-established law that *only* the motions specified in NRAP 4 would toll the time in which to file a notice of appeal. *See, e.g., Chapman Indus. v. United Ins. Co.*, 874 P.2d 739, 741 (Nev. 1994) (per curiam) (a motion for reconsideration is not a tolling motion under NRAP 4(a) and therefore does not re-start or toll the time in which to file a notice of appeal); *Holiday Inn Downtown v. Barnett*, 732 P.2d 1376, 1379 (Nev. 1987) (per curiam) (a motion to vacate an order affirming an administrative decision is not a tolling motion under NRAP 4(a) and therefore does not re-start or toll the time in which to file a notice of appeal). This was all well-established law at the time of Collier's conviction.

## IV.  Conclusion

The majority opinion allows a petitioner to resurrect an expired right to file a habeas petition attacking a judgment of conviction simply by filing a motion to correct an illegal sentence. This is contrary to Nevada law and to this court's holdings in *Loveland* and *Moran*.

Although the majority acknowledges that we have no power to second guess state court interpretations of state law,

---

[12]Like Collier, Dickerson argued that his direct appeal was late because his counsel failed to tell him he had a right to appeal. 967 P.2d at 1133.

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), that is exactly what the majority does. It second guesses NRS § 34.726(1) and NRAP 4(b), not to mention our own burden of proof rule stated in *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003).

If Collier's original July 5, 1995 judgment of conviction is considered, Collier's November 16, 1998 notice of appeal was filed well after the thirty-day deadline in NRAP 4(b), and his May 28, 1999 habeas petition was filed well after the one-year deadline in NRS § 34.726(1).

If the March 26, 1997 amended judgment of conviction is considered (which it should not be), Collier's November 16, 1998 notice of appeal was filed after the thirty-day deadline in NRAP 4(b), and his May 28, 1999 habeas petition was still filed after the one-year deadline in NRS § 34.726(1).

The one-year deadline in NRS § 34.726(1) was at all times well-established law, and any way you look at this case, Collier missed that deadline. Accordingly, I respectfully dissent.